

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-25-00282-CR, 04-25-00283-CR, 04-25-00284-CR, 04-25-00285-CR,
04-25-00286-CR, 04-25-00287-CR, and 04-25-00288-CR

Alfredo **GARCIA** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court Nos. B21-478, B21-479, B21-480, B21-481, B21-482, B21-483, and B21-484
Honorable M. Patrick Maguire, Judge Presiding

Opinion by:   Adrian A. Spears II, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
           Adrian A. Spears II, Justice
           H. Todd McCray, Justice

Delivered and Filed: July 22, 2026

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

     Alfredo Garcia Jr. was charged in seven separate indictments with sexually abusing four

children: (1) aggravated sexual assault of N.F.[1] (Trial Court No. B21-478); (2) indecency with a

child by contact of N.F. (Trial Court No. B21-479); (3) continuous sexual abuse of B.C. (Trial

Court No. B21-480); (4) aggravated sexual assault of B.C. (Trial Court No. B21-481); (5)

---

[1]We use pseudonyms to refer to the complainants.

aggravated sexual assault of B.C. (Trial Court No. B21-482); (6) aggravated sexual assault of E.F. (Trial Court No. B21-483); and (7) indecency with a child by contact of S.C. (Trial Court. No. B21-484). All seven causes were tried together in a single jury trial, and Garcia was found guilty of all charges. He was sentenced to fifty years for the continuous sexual abuse charge, fifty years for the aggravated sexual assault charges, and twenty years for the indecency charges, all to run concurrently. Garcia then filed a notice of appeal in each cause number. We consolidated Appeal Nos. 04-25-00282-CR, 04-25-00283-CR, 04-25-00284-CR, 04-25-00285-CR, 04-25-00286-CR, 04-25-00287-CR, and 04-25-00288-CR for purposes of briefing and argument on appeal.

In his brief, Garcia argues that the evidence is legally insufficient to support his convictions in each cause number. In Appeal Nos. 04-25-00282-CR, 04-25-00284-CR, 04-25-00287-CR, and 04-25-00288-CR, we affirm the trial court's judgments in Trial Court Nos. B21-478, B21-480, B21-483, and B21-484. In Appeal Nos. 04-25-00283-CR, 04-25-00285-CR, and 04-25-00286-CR, we hold that the evidence is legally insufficient to support Garcia's convictions. We therefore reverse the trial court's judgments in Trial Court Nos. B21-479, B21-481, and B21-482, and render judgments of acquittal in those cause numbers.

## BACKGROUND

The complainants in these appeals are Garcia's three nieces (N.F., B.C., and E.F.) and one nephew (S.C.). All four complainants testified that when they were children, Garcia was often their babysitter. They each testified to the same pattern: after going to bed and falling asleep, Garcia would get behind them in bed and touch them inappropriately. Garcia denied all allegations when he testified. Garcia's sister, who is also the mother of S.C. and B.C., testified that she did not believe the allegations made by her two children. After hearing all the evidence, the jury found Garcia guilty in all seven cases.

**STANDARD OF REVIEW**

"Evidence is legally sufficient to support a conviction if, when viewing all of the evidence in the light most favorable to the verdict, any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hernandez v. State*, 727 S.W.3d 83, 87 (Tex. Crim. App. 2025); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McPherson v. State*, 677 S.W.3d 663, 664 (Tex. Crim. App. 2023). "When conducting a sufficiency review, we consider all the evidence admitted at trial." *Hernandez*, 727 S.W.3d at 87. "The jury is the sole judge of the weight and credibility of the evidence." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). "We do not sit as the thirteenth juror, and we do not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Hernandez*, 727 S.W.3d at 87.

"The jury is permitted to draw reasonable inferences from the evidence adduced at trial." *Id*. "Additionally, the jury may use common sense, common knowledge, personal experience, and observations from life when drawing inferences." *Id*. "When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Edward*, 635 S.W.3d at 655.

"The sufficiency of the evidence is measured against the hypothetically correct jury charge, defined by the statutory elements as modified by the charging instrument." *Hernandez*, 727 S.W.3d at 87 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that accurately states the law, is authorized by the indictment, does not increase the State's burden of proof, and adequately describes the offense with which the defendant is charged." *Id*.

**TRIAL COURT NO. B21-478: AGGRAVATED SEXUAL ASSAULT OF N.F.**

In Appeal No. 04-25-00282-CR, Garcia argues that the evidence is insufficient to support his conviction of aggravated sexual assault of a child in Trial Court No. B21-478. Specifically, Garcia argues the evidence does not show that he penetrated the sexual organ of N.F. He argues that during her testimony, N.F. replied in the affirmative to the State's leading question and never detailed what she meant by Garcia "opening" her vagina. The State responds that the evidence is sufficient to show penetration.

A person commits the offense of aggravated sexual assault of a child under fourteen years of age if the person intentionally or knowingly does any of the following acts against a child under fourteen years of age: (1) causes the penetration of the anus or sexual organ of the child by any means; (2) causes the sexual organ of the child to contact the sexual organ of the actor; or (3) causes the anus of the child to contact the sexual organ of the actor. *Chavez v. State*, 712 S.W.3d 166, 173 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd) (discussing section 22.021(a)(1)(B), (a)(2)(B) of the Texas Penal Code). In Trial Court No. B21-478, the indictment alleged that Garcia intentionally and knowingly sexually assaulted N.F., a child younger than fourteen years of age, by causing his finger to contact and penetrate N.F.'s female sexual organ.

The term "penetration" is not defined by statute. *Prestiano v. State*, 581 S.W.3d 935, 941 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). The Texas Court of Criminal Appeals has "afforded this term its ordinary meaning in the context of aggravated sexual assault, noting that it means 'to enter into' or 'to pass through.'" *Id*. (quoting *Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015)). "This definition distinguishes from 'mere contact with the outside of an object.'" *Id*.

In *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992), the court of criminal appeals considered the appellant's argument that the evidence was insufficient to support his conviction because his step-daughter testified she was touched only on the outside of her sexual organ. The step-daughter testified that the appellant pressed his finger on the outside of her vaginal area and that she never felt his finger inside her vagina. *Id*. at 408. However, she testified that she did feel pain or discomfort in her "vaginal area" and that she could feel his finger. When asked how to describe what she felt, the step-daughter testified, "Well—okay. But then he started pressing and it hurt." *Id*. at 409. The step-daughter was then asked, "Pressing with his finger?" *Id*. She replied, "Yes." *Id*.

In addressing the appellant's sufficiency argument, the court noted that "mere contact with the outside of an object does not amount to a penetration of it." *Id*. The court continued, "But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact." *Id*. "Consequently, it is not ungrammatical to describe [the a]ppellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips." *Id*.

Here, N.F. testified that Garcia's primary function in the family was a babysitter for her and her cousins. She testified that when she was about eleven or twelve years old, her parents had gone out, and Garcia was babysitting her and her younger sibling. After she went to bed, she felt Garcia get into the bed behind her:

Q:     Do you remember what happened next?
A:     I remember he put his arm around me and he scooted closer to me.
Q:     Where was he in relation to your body?

A:      He was behind me. I was laying [sic] on this side, and he laid [sic] behind me. (Indicating)

Q:      Then what happened?

A:      I just felt him touching me, and he put his hand inside my pants.

Q:      Did you move around at all or—

A:      When I felt him put his hand in my pants, I just got scared and didn't want to move.

Q:      Okay. Did his hands or fingers go anywhere on your body?

A:      Yes. He put his hand inside my underwear, and he was touching—he was touching me.

Q:      When you say touching you, was he—what was he touching?

A:      I just remember feeling his fingers. I just felt his fingers rubbing my vagina, then he opened it.

Q:      So his—so with his fingers, he penetrated your vagina by opening up your vagina when you were about 11 or 12 years old?

A:      Yes.

Q:      What happened next?

A:      I just remember him moving his fingers up and down and just pushing me close to him.

Q:      Did he say anything to you?

A:      No, but I will never forget this clicking sound that he made with his tongue.

Thus, N.F. testified that Garcia touched her vagina inside her underwear, used his fingers to open up her vagina, rubbed her vagina with his fingers, moving his fingers up and down on her vagina while he used pressure to push her close to his body. This evidence constitutes more than mere touching on the outside of the vagina. *See Prestiano*, 581 S.W.3d at 941. We therefore hold the evidence is legally sufficient to show penetration. *See Vernon*, 841 S.W.2d at 409.

### TRIAL COURT NO. B21-483: AGGRAVATED SEXUAL ASSAULT OF E.F.

Similarly, in Appeal No. 04-25-00287-CR, Garcia argues that there is no evidence of penetration to support his conviction of aggravated sexual assault of E.F. The indictment alleged that Garcia intentionally and knowingly caused the penetration of the sexual organ of E.F., a child younger than fourteen years of age, by the finger of Garcia.

E.F. testified that on October 15, 2009, when she was eleven years old, she spent the night sleeping in the same bed as her grandmother and Garcia, who is her uncle. E.F. testified that she

was sleeping in the middle when she felt Garcia "touch between [her] legs and just open [her] legs, and that's when [she] woke up to his hands in [her] private area." She remembered her grandmother waking up and Garcia telling her grandmother to go back to sleep. E.F. said she "took that opportunity to turn away and close [her] legs and turn the other way." E.F. testified that Garcia touched her vagina inside her clothes with his fingers. E.F. was then asked whether Garcia inserted his fingers inside her vagina. She replied, "No." The prosecutor then gave E.F. a Kleenex box and said that the plastic parts at the opening of the box represented E.F.'s vagina. The prosecutor asked E.F. to show the jury how Garcia's hands moved and where his fingers went.

> Q:    Did [Garcia] ever manipulate the lips of your vagina?
> A:    Yes.
> Q:    Okay. So if we were to say that penetration is just moving the lips of your vagina, then it would be penetration, correct?
> A:    Yes.
> Q:    All right. Sorry. How long did that last?
> A:    I don't remember.
> Q:    What made it stop?
> A:    My grandmother woke up.

E.F. testified that nothing like that had happened before that night and nothing like that ever happened again.

Garcia argues that this testimony is not sufficient to show penetration. As noted above, "vaginal penetration is not required" under the aggravated sexual assault statute. *Steadman v. State*, 280 S.W.3d 242, 247-48 (Tex. Crim. App. 2009). All that is required is "penetration of the 'female sexual organ.'" *Id.* (quoting *Vernon*, 841 S.W.2d at 409-10). Thus, penetration occurs so long as contact with the female sexual organ "could reasonably be regarded by ordinary English speakers as more intrusive than contact with [the] outer vaginal lips." *Vernon*, 841 S.W.2d at 409-10; *see Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) ("Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault

statute."). In support of his argument, Garcia cites *Woodall v. State*, 376 S.W.3d 134, 139-40 (Tex. App.—Texarkana 2012, no pet.), where the child denied the appellant had touched her on the "inside of [her] private" and the defendant admitted to touching the child on the outside of her underwear and stated "he could feel the contours or the ridges of the child's vagina through her cotton" underwear. *Id*. at 139. When asked if he touched the top or the inside of the child's vagina, the defendant "stated that he touched the side, 'kind of like where the flaps are'" and that he "put a little pressure" on it. *Id*. The court of appeals held that there was no evidence from which the jury could infer "more than external contact with the outer vaginal lips occurred." *Id*. at 140.

Here, however, E.F. testified that Garcia opened her legs, felt her vagina underneath her clothes, and manipulated her vagina by moving the lips. E.F. then, using the Kleenex box, demonstrated to the jury how Garcia manipulated the lips of her vagina. The actions of Garcia, as described by E.F., are more than "mere contact with the outside of" the vagina. *See Prestiano*, 581 S.W.3d at 941. We hold the evidence is legally sufficient to show penetration. *See Vernon*, 841 S.W.2d at 409.

### TRIAL COURT NO. B21-479: INDECENCY WITH A CHILD (N.F.)

In Appeal No. 04-25-00283-CR, Garcia argues that the evidence is insufficient to support his conviction of indecency with a child because there is no evidence he caused N.F. to contact his genitals. Section 21.11(a)(1) of the Texas Penal Code provides that a person commits the offense of indecency with a child if, with a child younger than seventeen years of age, the person "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE § 21.11(a)(1). "Sexual contact" is defined any of the following acts "if committed with the intent to arouse or gratify the sexual desire of any person": "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" or "any touching of any

part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" "if committed with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE § 21.11(c). The indictment alleged that Garcia intentionally or knowingly engaged in sexual contact with N.F. by causing N.F., a child younger than seventeen years of age, to make contact with his genitals.

Garcia argues that during N.F.'s testimony, she described one instance of Garcia touching her vagina but gave no testimony about N.F. touching Garcia's genitals. In response, the State argues in a conclusory fashion that it "introduced direct testimony from" N.F. "in addition to the testimony of other witnesses for the State and exhibits." The State, however, does not specifically point to any testimony showing that Garcia caused N.F. to touch his genitals. As noted above in our discussion of Appeal No. 04-25-00282-CR, during N.F.'s testimony, N.F. described Garcia "opening up" her vagina with his fingers. She was then asked if Garcia ever made her touch anything on him. She replied, "No." Thus, N.F. did not testify that Garcia caused her to touch his genitals, and in reviewing all the evidence in the record, we can find no evidence from which a reasonable factfinder could infer that Garcia caused N.F. to touch his genitals. Thus, we hold the evidence is legally insufficient to support his conviction in Trial Court. No. B21-479 for indecency with a child and render a judgment of acquittal on that conviction. *See Stewart v. State*, 240 S.W.3d 872, 874 (Tex. Crim. App. 2007) (reversing conviction for legally insufficient evidence and rendering judgment of acquittal).

### TRIAL COURT NO. B21-480: CONTINUOUS SEXUAL ABUSE OF B.C.

In Appeal No. 04-25-00284-CR, Garcia argues the evidence is legally insufficient to support his conviction for continuous sexual abuse of B.C. because he argues the evidence does not show that the acts of sexual abuse occurred on two separate occasions that were thirty or more

days apart. Garcia stresses that the "testimony of a witness stating that touching occurred throughout her childhood is insufficient to establish the offense of continuous sexual abuse of a child" because the "statute requires proof that two or more acts of sexual abuse occurred during a period of at least thirty days."

Section 21.02(b) of the Texas Penal Code provides that a person commits the offense of continuous sexual abuse if

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense . . . .

TEX. PENAL CODE § 21.02(b). "Acts of sexual abuse" include sexual assault under section 22.011, aggravated sexual assault under section 22.021, and indecency with a child under section 21.11(a)(1) if the person committed the offense in a manner other than by touching the breast of a child. *Id*. § 21.02(c).

Continuous sexual assault requires the jury to "agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id*. § 21.02(d). However, the "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id*. The acts of sexual abuse listed in the continuous sexual abuse statute are not elements of the offense. *Holton v. State*, 487 S.W.3d 600, 607 (Tex. App.—El Paso 2015, no pet.); *Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.); *Casey v. State*, 349 S.W.3d 825, 829 (Tex. App.—El Paso 2011, pet. ref'd). Instead, the "commission of two or more acts of sexual abuse over a specified time period—that is, the pattern of behavior or the series of

acts—is the element as to which the jurors must be unanimous in order to convict." *Pollock*, 405 S.W.3d at 405; *see also Holton*, 478 S.W.3d at 606; *Casey*, 349 S.W.3d at 829. "The 'series' itself is the key 'element' of the offense upon which jury unanimity is required; the individual acts of sexual abuse enumerated in the statute are simply the 'manner and means' by which the series is committed." *Holton*, 478 S.W.3d at 606-07; *see also Casey*, 349 S.W.3d at 829.

Here, the original indictment alleged that on or about October 15, 2002 through January 1, 2010, over a period that was thirty days or more in duration, Garcia committed two or more acts of sexual abuse against B.C., a child under the age of fourteen years and not his wife. The indictment further alleged that the acts of sexual abuse were aggravated sexual assault of a child. Later, the State moved to amend the indictment, which the trial court granted. The indictment was amended to allege that the two acts of sexual abuse were aggravated sexual assault of a child and indecency with a child by sexual contact. The indictment was also amended to allege that the period of time in question was between September 1, 2007 through January 1, 2010. September 1, 2007 is the effective date of the continuous sexual abuse statute and thus the acts of sexual abuse must occur after that date. *See Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd) (explaining that "Section 21.02, defining the offense of continuous sexual abuse of a young child, became effective September 1, 2007, and it does not apply to an offense committed before that date").

At trial, B.C. testified that she and her brother, S.C., are twins. They were born in November 1998. When asked about the role of Garcia, her uncle, in her life, B.C. replied that he was her and her brother's "babysitter." The first incident B.C. testified about occurred when she was in pre-kindergarten but younger than five years old, which would have been sometime between November 2002 to November 2003. B.C. testified that she remembered "laying [sic] on

the floor" of a dark bedroom at nighttime and her "uncle [Garcia] being there" and "touching [her] inappropriately." When asked what she meant by Garcia touching her inappropriately, B.C. replied, "Him [Garcia] touching my private areas and him being behind me." She continued, "I was—I don't remember if I was asleep or awake, but I do remember it was nighttime, so I don't recall if I was asleep whenever he did go into the room or I was awake, and I just don't remember him going" into the room. "All I know is it was nighttime." B.C. testified that Garcia's "private areas were in between [her] leg or [her] legs." When asked what she meant by Garcia's private areas, B.C. replied that she meant Garcia's penis. She was then asked whether Garcia's penis was touching her vagina. B.C. testified,

> Well, I remember him being behind me, so I don't remember if it was just on my legs or in between my legs, but I do remember him having his penis in between my legs, and, yeah, I don't know if it was—it ever, like, touched me, like, on my private area like that, but I do remember his hands.

B.C. was asked what she remembered about Garcia's hands. B.C. replied, "His hands going to the front of my legs from behind me and moving his fingers on top." B.C. was asked to clarify if she meant his fingers were touching her vagina. B.C. responded, "Yes, sir." B.C.'s testimony about this incident is sufficient to show that Garcia committed indecency with a child by contact of her sexual organ. *See* Tex. Penal Code §§ 21.02(b)-(c), 21.11(a)(1). B.C. testified this act occurred when she was younger than five years old, which was before September 1, 2007, the effective date of the continuous sexual abuse statute. Thus, as a matter of law, this act cannot constitute one of the acts of sexual abuse under the continuous sexual abuse statute. *See Martin*, 335 S.W.3d at 873.

It is evidence, however, of the type of conduct B.C. was talking about during her testimony when she described her "relationship" with Garcia. She testified that the above act was the first memory she had of him sexually abusing her. She was then asked if that first experience of being assaulted happened only one time or whether "that type of behavior continued." B.C. replied, "I

don't remember times, like, years and ages, but I do know that it happened for—that relationship happened *for the majority of my childhood*." (emphasis added).

Q:      Now, when you are talking about the relationship how you understood it as a child, correct?
A:      Yes.
Q:      And would the actual actions of him coming into a room when it's nighttime and what you just previously testified about, rubbing his penis on you, rubbing hands on your vagina, would that continue—would that happen more often than just that one time?
A:      Yeah, so much where I really can't say—like pinpoint, like, certain times and certain—
Q:      I understand. I understand. Okay. Now, are there times that kind of stick out in your memory that were just maybe a little bit different or—
A:      Yes.
Q:      —something happened?
A:      Yes.
Q:      Okay. Let's move to one of those times, okay?
A:      Okay.

The prosecutor then asked B.C. about incidents that occurred when she lived at the apartments located at 1000 Paschal Avenue in Kerrville. B.C. testified that "multiple incidents" happened at those apartments but that one involving a chocolate condom stuck out in her memory. B.C. testified, "And I remember being on the side of the bed and him getting it out . . . [t]he condom." B.C. then testified,

I don't really remember how—well, I don't remember how it looked or any of that, but I do remember him having me lick it, and by "it," I mean his penis with the condom, and it was just—it was just a little bit, and he rubbed my face after and just—that was it. It wasn't anything brutal and—yeah.

B.C.'s testimony is evidence that Garcia committed an act of sexual abuse when she lived at the apartments on Paschal Avenue. *See* TEX. PENAL CODE §§ 21.02(b)-(c), 22.021(a)(1)(A)(ii).

Garcia argues that B.C. did not testify as to a date when he allegedly committed this act. However, other witnesses testified about the time period when B.C. lived with Garcia at the apartments on Paschal Avenue. N.F. testified that her "Aunt Nellie, Uncle Alfredo [Garcia]," S.C.,

and B.C. lived at the apartments on Paschal Avenue. Garcia testified that he lived at the apartments on Paschal Avenue "around 2007, 2008 with [his] sister Teresa." When asked how long they lived there, Garcia replied, "We lived there for about a year." Thus, there is evidence from which a rational juror could conclude that Garcia committed an act of sexual abuse against B.C. sometime in 2007 to 2008. *See* TEX. PENAL CODE §§ 21.02(b)-(c), 22.021(a)(1)(A)(ii).

B.C. was then asked if her testimony about the above act of sexual abuse at the apartments on Paschal Avenue was isolated:

> Q: But, again, this wasn't—this was an isolated incident that you remember that was a little bit different, but the same type of activity—sexual assaults were happening throughout the time of living at 1000 Paschal. Is that safe to say?
>
> A: Yes, sir. Nothing with—nothing orally, but he would go into the bedroom and touch my private areas and tell me about private hair and growing pubic hair and how one day I would grow up and have it like that and—
>
> Q: How did that—
>
> A: He would use terms for my vagina, and he would say that it was his cat, and that's one that really stuck with me, because whenever I got older, I understood the real term for it is, and then it clicked as to why he would call me his cat. Yeah.
>
> Q: So we just have to—I have to kind of dig in a little bit deeper with you, and I'm sorry, but when you are saying "private parts," what are you talking about?
>
> A: On me or him?
>
> Q: On you.
>
> A: My vagina.
>
> Q: Right. And what was his, you know, operating—like, what would he do every time that you remember when it was nighttime and he was either babysitting you or alone with you? What was the mode of operations that would go—would happen to you over and over and over again?
>
> A: He would lay with me, put his hands in between my legs and rub my vagina to where I felt like I needed to pee.
>
> Q: What would make him stop?
>
> A: I guess his own pleasure.

B.C. testified the abuse stopped when she was about thirteen years old.

B.C. also testified about an incident in the fall to winter of 2007 when she lived at the Secret Valley Apartments near Ranchero Road: "I do remember one time feeling warm, and he

[Garcia] had, well, now I know, but at that point ejaculated, and he cleaned it up, the towel or a rag." B.C. was asked how many times she was sexually abused by Garcia from the age of four to the age of thirteen. B.C. replied, "I don't know. I'd say more than ten." She was then asked if it happened so often she could not keep count. B.C. replied, "It was normal."

In reviewing the entirety of B.C.'s testimony, she was clear that the first time an act of sexual abuse was committed by Garcia was when she was four years old. Although this act itself cannot form the basis for an act of sexual abuse because it occurred before the effective date of the continuous sexual abuse statute, B.C. was clear that the same type of acts, including an explicit description of aggravated sexual assault, were consistently performed by Garcia up until she was thirteen years old. We conclude the evidence is legally sufficient to show that Garcia, during a period that was thirty days or more in duration, committed two acts of sexual abuse against B.C., who was younger than fourteen years of age. *See Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (holding that the evidence was legally sufficient to support continuous sexual assault conviction based on testimony from complainant that "appellant touched her 'often,' more than ten times, more than once a week, and the abuse continued until she moved out of his house").

#### TRIAL COURT NOS. B21-481 & B21-482: AGGRAVATED SEXUAL ASSAULT OF B.C.

In Appeal Nos. 04-25-00285-CR and 04-25-00286-CR, Garcia argues the evidence is legally insufficient to support his convictions of aggravated sexual assault of B.C. because there is no evidence that he caused his male sexual organ to make contact with B.C.'s sexual organ. Both indictments in Trial Court Nos. B21-481 and B21-482 alleged that Garcia "did then and there intentionally and knowingly cause the sexual organ of [B.C.], a child younger than 14 years of age, to contact the sexual organ of" Garcia. The only difference in the two indictments is that Trial

Court No. B21-481 alleged the date of the offense was October 15, 2011 while Trial Court No. B21-482 alleged the date of the offense was November 15, 2011. Both dates are outside date range listed in the amended indictment that alleged continuous sexual abuse of B.C.

We note that in response to Garcia's legal sufficiency argument, the State merely contends in a conclusory fashion that it "has met its burden of proof in this case" and that the "record reflects the jury was provided live eyewitness testimony and supporting exhibits at Appellant's trial." The State, however, points to no specific testimony in the record that shows Garcia caused his male sexual organ to make contact with B.C.'s sexual organ on a date outside the date range alleged in the continuous sexual abuse charge. We note that in addition to the testimony listed in the continuous sexual abuse section of this opinion, B.C. also testified about the last incident between her and Garcia:

> Q: Now, when was the last time that you remember being sexually assaulted by the defendant?
> A: I would say I was in seventh grade, and it was at a family friend's apartment, and I don't even really remember what his actions were besides picking me up in the middle of the night and taking me to the room, and amongst these visits he would kiss me and—on the mouth, and I remember being carried back to the living room.
> Q: Did he do the same thing about touching your vagina that time?
> A: I honestly don't remember. I remember being picked up off the living room floor or woken up and then carried to the bedroom, which we had gotten to, because it wasn't even our house or place, and I don't really remember what he did exactly, but I just know that was definitely it, because my siblings were in the living room with me.

B.C. gave no further details about this incident. This testimony is not sufficient to show that Garcia committed aggravated sexual assault of a child, and having searched the record, we can find no other evidence to support a conviction for aggravated sexual assault of a child on a date outside of the date range alleged in the continuous sexual abuse charge. *See* TEX. PENAL CODE 22.021 (providing that aggravated sexual assault of a child is when a person intentionally or knowingly

(1) causing the penetration of the anus or sexual organ of a child by any means; (2) causing the penetration of the mouth of a child by the sexual organ of the actor; (3) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; (4) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or (5) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor). We therefore hold the evidence is insufficient to support Garcia's convictions for aggravated sexual assault of a child in Trial Court Nos. B21-481 and B21-482 and render judgment of acquittals in those cause numbers. *See Stewart*, 240 S.W.3d at 874 (reversing conviction for legally insufficient evidence and rendering judgment of acquittal).

### TRIAL COURT NO. B21-484: INDECENCY WITH A CHILD (S.C.)

In Appeal No. 04-25-00288-CR, Garcia argues that there is legally insufficient evidence to support his conviction for indecency with a child because he contends there is no evidence that he touched S.C.'s genitals with intent to arouse or gratify his sexual desire. The amended indictment in Trial Court No. B21-484 alleged that on or about October 15, 2007, Garcia with intent to arouse or gratify his sexual desire engaged in sexual contact with S.C. by touching S.C.'s genitals, a child younger than seventeen years of age.

Intent to arouse or gratify sexual desire may be inferred from a person's conduct, remarks, and the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Rodriguez v. State*, 732 S.W.3d 289, 295 (Tex. App.—Houston [14th Dist.] 2025, pet. ref'd). "Such circumstantial evidence is as probative as direct evidence, and the jury may draw reasonable inferences from that evidence." *Rodriguez*, 732 S.W.3d at 295 (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013)). "The defendant need not vocalize or admit his sexual intent for the jury to infer that such intent was present." *Stephenson v. State*,

673 S.W.3d 370, 384 (Tex. App.—Fort Worth 2023, pet. ref'd); *see Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words.").

S.C. testified that Garcia "was just a prominent figure in the family." He "was the fun uncle." S.C. described Garcia touching him in Fall 2007 when S.C. was eight years old:

> I guess the best way to recall it would be just as I remember it, and it was just me waking up in the middle of night to a strange sensation. I feel a hand going down the back of my shorts, my pants, whatever I was wearing. I don't remember exactly, but it was a feeling of a hand going down further and further. I feel extremely uncomfortable. For some reason, everything in my body is just telling me not to move. I just am just laying there, and I feel—I feel his hand moving further down and forward, and I remember the feeling, because it made zero sense as to what was happening or what I was supposed to do in the moment. I feel him grab my genitals, and I move a little bit, and he just keep feeling. I don't—I don't remember how long the incident took to happen or how long the time period was or if it was a matter of seconds or if it was minutes. I just remember the next day very, very prevalently, because it was always—in the room that we were in, we had a big bed and bunk beds, and it was always a competition to who got to sleep on the big bed whenever Uncle was over, who got to sleep in the big bed with Uncle. After that night, I did not want to be in that big bed anymore. I remember going to bed early the next night in bunk beds so that way I would not have to be in that bed again.

S.C. testified that Garcia never touched him again because S.C. "made sure not to put [himself] in a situation where [he] felt [he] was going to have this happen to [him] again."

From S.C.'s testimony, the jury could reasonably infer that Garcia had the specific intent to arouse or gratify. *See Stephenson*, 673 S.W.3d at 384 (rejecting appellant's argument that the jury could not infer sexual intent because the victim described the appellant "as laughing or joking when he grabbed [the victim]'s penis" and explaining that the jury could rely on the victim's testimony that "he did not believe it was a joke" and the jury "was not required to believe that it was [a joke] either"); *see also Roe v. State*, 660 S.W.3d 775, 783 (Tex. App.—Eastland 2023, pet. ref'd) (holding evidence sufficient to infer intent, explaining that "placing a vibrator on a minor's genitals can hardly be considered an innocent activity"). Garcia's actions of touching S.C.'s genitals, as testified to by S.C., were not inadvertent or mistaken. S.C. testified that he was woken

up by a "strange sensation" and felt Garcia's hand going underneath his clothes, "down further and further" to touch his genitals in a manner that made S.C. "extremely uncomfortable" such that S.C. made sure to never be asleep in a bed with Garcia again. We hold that the evidence is legally sufficient to show Garcia acted with intent to arouse or gratify.

### CONCLUSION

For the reasons stated above, we hold the evidence is legally sufficient in Appeal Nos. 04-25-00282-CR, 04-25-00284-CR, 04-25-00287-CR, and 04-25-00288-CR. Therefore, we affirm the judgments in Trial Court Nos. B21-478, B21-480, B21-483, and B21-484. In Appeal Nos. 04-25-00283-CR, 04-25-00285-CR, and 04-25-00286-CR, we conclude the evidence is legally insufficient to support Garcia's convictions. We therefore reverse the judgments in Trial Court Nos. B21-479, B21-481, and B21-482 and render judgments of acquittal in those cause numbers.

Adrian A. Spears II, Justice

DO NOT PUBLISH